ALDEN F. ABBOTT
General Counsel
BRIAN M. WELKE, *pro hac vice application pending*
bwelke@ftc.gov; Tel. (202) 326-2897; Fax (202) 326-3197
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W., CC-9528
Washington, DC 20580
DELILAH VINZON, Local Counsel, Cal. Bar. No. 222681
dvinzon@ftc.gov; Tel. (310) 824-4328; Fax (310) 824-4380
FEDERAL TRADE COMMISSION
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| v. | Case No. 2:20-cv-08612 |
| NUTRACLICK, LLC, a limited liability company, also d/b/a Force Factor; | **COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |
| DANIEL WALLACE, individually and as an officer of NutraClick, LLC; and | |
| PATRICK CARROLL, individually and as an officer of NutraClick, LLC; | |
| Defendants. | |

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.      The FTC brings this action under Sections 5(a), 5(m)(1)(A), 16(a), and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 45(m)(1)(A), 56(a), 57b; Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404; and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 4 of ROSCA, 15 U.S.C. § 8403, and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, in connection with their deceptive marketing of their negative option program.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(m)(1)(A), 57b, 6102(c), 6105(b), and 8404(a).

3.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2), (c)(2).

## PLAINTIFF

4.      The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces ROSCA, 15 U.S.C. §§ 8401-8405, which prohibits the sale of goods or services on the internet through negative option marketing without meeting certain requirements to protect consumers.  A negative option is an offer in which the seller treats a consumer's silence as consent to be charged for goods or services.  The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices in or affecting commerce.

5.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to remedy violations of ROSCA and the TSR to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 57b, 6102, and 8404.

## DEFENDANTS

6.      Defendant NutraClick, LLC ("NutraClick"), also doing business as Force Factor, is a Delaware limited liability company with its principal place of business at 24 School Street, 4th Floor, Boston, Massachusetts 02108.  NutraClick transacts or has transacted business in this District and throughout the United States.

7.      Defendant Daniel Wallace ("Wallace") is the co-founder and chief executive officer of NutraClick.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of NutraClick set forth in this Complaint.  Defendant Wallace, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

8.      Defendant Patrick Carroll ("Carroll") is the chief marketing and technology officer of NutraClick.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of NutraClick set forth in this Complaint.  Defendant Carroll, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

//

//

## COMMERCE

9.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

### Overview

10.     Defendants enroll consumers in paid "VIP Membership" programs by enticing them with "free samples" of their dietary supplements or beauty products. After a "Free Trial" typically described as 18 days or 34 days in duration (the "Free Trial Period"), acceptance of these free samples converts to paid memberships, unless consumers affirmatively cancel their memberships.

11.     From September 2016 until after learning of the FTC's investigation in May 2019, Defendants violated ROSCA and the TSR in connection with their sales activities by failing to clearly and conspicuously disclose that consumers who received free samples must call at least *one day before* the end of the advertised Free Trial Period to avoid being charged for the monthly membership program, which includes a one-month supply of the sampled product.

12.     Defendants Wallace and Carroll (the "Individual Defendants") are NutraClick's sole officers and had authority to control, and knowledge of, NutraClick's failure to clearly and conspicuously disclose its billing practice.

### Related FTC Actions

13.     In September 2016, the FTC brought a lawsuit against NutraClick in this District, alleging that it failed to disclose material terms of its membership programs. *FTC v. NutraClick, LLC*, No. 2:16-cv-06819-DMG (C.D. Cal.). Individual Defendants were not parties to the lawsuit.

//

//

14.   The FTC and NutraClick settled the lawsuit, resulting in the Court's entry of an Order for Permanent Injunction and Monetary Judgment (the "Permanent Injunction").

15.   The allegations in this Complaint are related to a concurrent civil contempt action in which the FTC charges Defendants with violations of the Permanent Injunction.

**Terms of Defendants' Membership Programs**

16.   Defendants sell products under various brand names, including Force Factor, Peak Life, Stages of Beauty, and ProbioSlim, and operate "VIP Membership" programs for their product lines.

17.   The terms of Defendants' membership programs are materially identical across all of their product lines, typically varying only in the length of the advertised Free Trial Period and the amount of the monthly recurring charge.

18.   Consumers enroll in Defendants' membership programs by signing up for a "free sample" of a NutraClick product and paying a small charge, typically $4.99, to cover shipping and handling.  Consumers may use the "free sample" during the Free Trial Period, typically advertised as 18 days or 34 days in duration.

19.   However, before learning of the FTC's investigation in May 2019, Defendants typically charged consumers' accounts for the membership program during the Free Trial Period, at 4:00 a.m. Eastern Time on the last day of the Free Trial Period.  The charge typically ranged from $70-80, depending on the product shipped to the consumer.

20.   After learning of the FTC's investigation, Defendants changed their billing practice to charge consumers' accounts for the membership program at 4:00 a.m. on the day after the Free Trial Period ends.

21.   Defendants continue charging consumers approximately every 30 days for the membership program until consumers call to cancel.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Defendants' Failure to Disclose Early Billing Practice**
**To Online Enrollees**

22.   Defendants advertise and sell their products on the internet through their mobile and desktop websites.  Defendants direct consumers to these websites through television, radio, text messages, and internet advertisements.  These advertisements offer a free "trial supply" or "free sample" of Defendants' products.

23.   When a consumer orders a free sample for the Free Trial Period, NutraClick enrolls them in one of its "VIP Membership" programs described in Paragraphs 16-21.

24.   Consumers order the free sample by submitting their shipping information via a "Customer Information Page" and then submitting their billing information via a "Checkout Page."

25.   Defendants' mobile and desktop Customer Information Pages promoting their products display the last day of the Free Trial Period, and state that the monthly VIP membership fee will be charged "after" the trial.

26.   For example, Figure 1 on the following page shows Defendants' desktop Customer Information Page for the ProbioSlim product.  This page indicates that consumers will receive an "18-Day Free Trial" with the advertised product.  It also states that consumers will be "charged *after* the trial" (italics added, red circle added for emphasis below).  Similar text appeared on Defendants' mobile internet Customer Information Pages.

*//*
*//*
*//*
*//*
*//*
*//*

**Figure 1** – Desktop Customer Information Page for ProbioSlim



27.      Before Defendants learned of the FTC's investigation in May 2019, the statement that the "monthly VIP membership" fee will be charged "after" the Free Trial Period was false.  In fact, Defendants charged consumers the monthly membership fee (or caused this fee to be charged) at 4:00 a.m. on the last day of the advertised Free Trial Period, rather than after the Free Trial End Date.  As a result, consumers were required to call Defendants one day before the end of the Free Trial Period to avoid the membership charge.

28.      Similarly, during that same time, Defendants' desktop and mobile Checkout Pages did not correct the false statement on their Customer Information Pages and did not otherwise clearly and conspicuously disclose that consumers were required to call Defendants one day before the end of their Free Trial Period to avoid the membership charge.

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29.     For example, Figure 2 below shows Defendants' desktop Checkout Page for the ProbioSlim product.  A checkbox text disclosure restates that the duration of consumers' Free Trial Period is 18 days and states that consumers must call "within" that time to avoid the membership charge.  It represents that the consumer will be sent a one-month supply of a product "beginning 18 days from now" at their expense, *unless* the consumer cancels within 18 days.

**Figure 2** – Desktop Checkout Page for ProbioSlim



30.     Before February 2018, the mobile internet version of Defendants' Checkout Page also contained the checkbox text disclosure depicted in Figure 2.

31.     In February 2018, Defendants changed the mobile internet version of their Checkout Page to remove the checkbox text disclosure depicted in paragraph 29 and replaced it with text representing consumers would be charged "after" the Free Trial Period.

**Defendants' Failure to Disclose Early Billing Practice**

**To Phone Enrollees**

32.     Defendants also sell their membership programs by phone to consumers across the United States.  Defendants respond to consumer calls

prompted by Defendants' television and radio advertisements, text messages, and internet advertisements such as those described above, and by calling consumers who input information into Customer Information Pages, but do not complete Checkout Pages.

33.    Defendants' telemarketers enroll consumers in Defendants' membership programs described above in Paragraphs 16-21.  Defendants have required their telemarketers to read written telemarketing scripts verbatim to consumers.

34.    From September 2016 to at least May 2019, Defendants' telemarketers failed to clearly and conspicuously disclose that consumers were required to call at least one day before the end of their Free Trial Period to avoid a monthly membership charge.

35.    For example, one of Defendants' telemarketing scripts stated, in pertinent part:

> You'll receive your free sample of [product] in about 3-5 days.  Now, once you've started using [product] and are seeing the results, you'll likely want to continue, so do nothing, and in 18 days, we will ship you a full 1 Month Supply of [product] for just $69.99 plus $4.99 shipping and handling billed to the same credit card you are using today.

36.    From September 2016 to at least May 2019, Defendants' telemarketers did not clearly identify when consumers would be charged.  For example, Defendants' telemarketers and telemarketing scripts did not clearly identify whether consumers' Free Trial Period commenced from the date of the enrollment phone call, the date of receipt of the product, "[o]nce [consumers] start using [the product]," or when consumers "are feeling the results."

//

37.    Defendants' telemarketers did not disclose that, in fact, Defendants would charge them at 4:00 a.m. on the 18th day of the Free Trial Period, before the Free Trial Period elapsed.

38.    Consumers who called Defendants on the final day of the Free Trial Period to cancel their enrollment in Defendants' membership programs already had been charged by Defendants, even though the Free Trial Period had not expired.

**Individual Defendants**

39.    At all time periods addressed in this Complaint, acting alone or in concert with others, Individual Defendants have controlled all aspects of Defendant NutraClick, including by managing its employees, developing and reviewing advertising and enrollment disclosures (including the webpages referenced herein), and reviewing information regarding consumer complaints, refund demands, and chargeback requests.

40.    Individual Defendants knew or should have known that NutraClick's webpages and telemarketers failed to clearly and conspicuously state that consumers were required to call to cancel their enrollments at least one day before the end of their Free Trial Period to avoid a monthly membership charge.

41.    For example, a class action lawsuit and a ruling in this District put Individual Defendants on notice that one or more webpages of Defendants failed to disclose consumers were required to call to cancel their enrollments at least one day before the end of their Free Trial Period.  Individual Defendants coordinated the response of a NutraClick subsidiary, Stages of Beauty, LLC, to a private-plaintiff putative class action filed in this District in 2017.

42.    In denying, in relevant part, a motion filed on behalf of NutraClick's subsidiary to dismiss that action, the Court stated:  "The [NutraClick subsidiary's] webpage does not include information instructing the subscriber that they must call that phone number [to cancel] at least one day prior to the date the next monthly

delivery ships." *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058, 1071 (C.D. Cal. 2018).

43.  Individual Defendants were aware, or should have been aware, of the class action lawsuit described in paragraph 41, the contents of the webpages at issue in that lawsuit, and the above-quoted statement of the Court indicating that a NutraClick subsidiary's webpage did not instruct consumers they were required to cancel their enrollments at least one day before the Free Trial End Date to avoid a charge for a program membership.

## VIOLATIONS OF THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT

44.  In 2010, Congress passed the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-8405, which became effective on December 29, 2010. Congress passed ROSCA because "[c]onsumer confidence is essential to the growth of online commerce.  To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business."  15 U.S.C. § 8401(2).

45.  Section 4 of ROSCA, 15 U.S.C. § 8403, generally prohibits charging consumers for goods or services sold in transactions effected on the internet through a negative option feature, as that term is defined in the TSR, 16 C.F.R. § 310.2(w), unless the seller (1) clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; (2) obtains the consumer's express informed consent before making the charge; and (3) provides a simple mechanism to stop recurring charges.  15 U.S.C. § 8403.

46.  The TSR defines a negative option feature as a provision in an offer or agreement to sell or provide any goods or services "under which the customer's silence or failure to take an affirmative action to reject goods or services or to

cancel the agreement is interpreted by the seller as acceptance of the offer."  16 C.F.R. § 310.2(w).

47.    As described in Paragraphs 16-31, Defendants have advertised and sold products, in transactions effected on the internet, through a negative option feature as defined by the TSR.  16 C.F.R. § 310.2(w).

48.    Pursuant to Section 5 of ROSCA, 15 U.S.C. § 8404, a violation of ROSCA is a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a.

## COUNT I

### Failure to Disclose All Material Terms for Online Sales

49.    In numerous instances, Defendants, as described in Paragraphs 16-31, in connection with charging or attempting to charge consumers for Defendants' products sold through a negative option feature on the internet, failed to clearly and conspicuously disclose all material terms of the transaction, such as the billing date that consumers would be charged for a monthly membership, before obtaining consumers' billing information.

50.    Therefore, Defendants' acts or practices set forth in Paragraph 49 violate Section 4 of ROSCA, 15 U.S.C. § 8403.

### VIOLATIONS OF THE TELEMARKETING SALES RULE

51.    In 1994, Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  The FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and amended certain sections thereafter.  16 C.F.R. Part 310.

52.    A "seller" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to a customer in exchange for consideration.  16 C.F.R. § 310.2(dd).

53.     A "telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(ff).

54.     "Telemarketing" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call.  16 C.F.R. § 310.2(gg).

55.     Defendants are subject to the TSR because they are "seller[s]" or "telemarketer[s]" engaged in "telemarketing" as defined by the TSR, 16 C.F.R. § 310.2(dd), (ff), and (gg).

56.     The TSR generally prohibits obtaining a customer's consent to pay for goods or services sold through a negative option feature, as that term is defined in the TSR, 16 C.F.R. § 310.2(w), unless the seller or telemarketer discloses truthfully, in a clear and conspicuous manner, "all material terms and conditions of the negative option feature, including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s)."  16 C.F.R. § 310.3(a)(1)(vii).

57.     As stated in Paragraph 45, the TSR defines a negative option feature as a provision in an offer or agreement to sell or provide any goods or services "under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer."  16 C.F.R. § 310.2(w).

58.     As described in Paragraphs 32-37, Defendants have advertised and sold products through a negative option feature by telephone as defined by the TSR.  16 C.F.R. § 310.2((w).

59.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C §
6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of
the TSR constitutes an unfair or deceptive act or practice in or affecting commerce,
in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

### Failure to Disclose All Material Terms for Phone Sales

60.     In numerous instances, Defendants, as described in Paragraphs 32-38,
in connection with charging or attempting to charge consumers for Defendants'
products sold through a telemarketed negative option feature, failed to clearly and
conspicuously disclose all material information, such as the dates that Defendants
will charge consumers for a monthly membership, before obtaining consumers'
consent to pay.

61.     Therefore, Defendants' acts or practices set forth in Paragraph 60
violate the TSR, 16 C.F.R. § 310.3(a)(1)(vii).

## CONSUMER INJURY

62.     Consumers have suffered substantial injury as a result of Defendants'
violations of ROSCA and the TSR.  In addition, Defendants have been unjustly
enriched as a result of their unlawful acts or practices.  Absent injunctive relief by
this Court, Defendants are likely to continue to injure consumers, reap unjust
enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

63.     Section 19 of the FTC Act, 15 U.S.C. § 57b, Section 5 of ROSCA, 15
U.S.C. § 8404, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b),
authorize this Court to grant such relief as the Court finds necessary to redress
injury to consumers resulting from Defendants' violations of ROSCA and the TSR,
including the rescission or reformation of contracts, and the refund of money.
//

64.    Defendants' violations of ROSCA and the TSR were committed with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 19 of the FTC Act, 15 U.S.C. § 57b, Section 5 of ROSCA, 15 U.S.C. § 8404, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

A.    Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of ROSCA and the TSR, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and disgorgement of ill-gotten monies;

B.    Enter a permanent injunction to prevent future violations of ROSCA and the TSR by Defendants; and

C.    Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated:  September 21, 2020                Respectfully submitted,

                                         ALDEN F. ABBOTT
                                         General Counsel

                                         Brian M. Welke
                                         Delilah Vinzon (Local Counsel)

                                         Attorneys for Plaintiff
                                         FEDERAL TRADE COMMISSION